UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECELIA C. BUCHMULLER,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 07-1622-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On December 17, 2007, Cecelia C. Buchmuller ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Supplemental Security Income benefits and Disability Insurance Benefits. On December 31, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On March 26, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on June 19, 2008, defendant filed an Answer to the Complaint. On October 6, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

## BACKGROUND

On August 30, 2004, plaintiff filed applications for Disability Insurance Benefits and Supplemental Social Security Income benefits alleging an onset date of October 16, 2003. (See Administrative Record ["AR"] at 15). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 25, 26, 27-31, 35-40). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 41). On February 28, 2006, the ALJ conducted a hearing in San Bernardino, California. (See AR at 397-451). Plaintiff appeared at the hearing with counsel and testified. (AR at 400-25, 431-33, 439-50). William Soltz, Ph.D, a medical expert, and Joseph M. Mooney, a vocational expert, also testified at the hearing. (AR at 421-35, 436-41).

On May 19, 2006, the ALJ issued a decision granting in part, and denying in part, plaintiff's applications for benefits. (AR at 15-23). The ALJ determined that plaintiff had the following severe combination of impairments at all times relevant to the decision: depressive disorder, not otherwise specified, with anxiety features and history of post-traumatic disorder, and degenerative changes in the cervical and lumbar spine with myofascial neck and low back pain. (AR at 18). The ALJ determined that the severity of plaintiff's mental impairment met the criteria of Section 12.06(A)(5), (B)(1-3) of 20 C.F.R. Part 404, Subpart P, Appendix 1 from October 16, 2001 through January 31, 2004. (AR at 21). Accordingly, the ALJ concluded that plaintiff was disabled from October 16, 2001 through January 31, 2004. (Id.).

The ALJ concluded that medical improvement related to plaintiff's ability to work occurred as of February 1, 2004. The ALJ found that beginning on February 1, 2004, plaintiff had the physical residual functional capacity to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently; stand or walk frequently with customary breaks; sit at least frequently with customary breaks; and climb, stoop, kneel, crouch or crawl occasionally while avoiding hazards such as unprotected heights. (AR at 21-22). With regard to plaintiff's mental residual functional capacity, the ALJ concluded that as of February 1, 2004, plaintiff could understand, remember and carry out simple, detailed and more complex instructions in a setting involving frequent interaction with supervisors and coworkers and limited, occasional

interaction with the public with no fast-paced production work. (AR at 22). The ALJ concluded that beginning on February 1, 2004, plaintiff was capable of performing her past relevant work as a deputy court clerk. (AR at 22-23). Accordingly, the ALJ concluded that plaintiff's disability ended on February 1, 2004 and that plaintiff was not disabled from February 1, 2004 through May 18, 2006, the date of the decision. (AR at 23).

Plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council and submitted additional evidence - a letter from Rajendra B. Patel, M.D., dated May 22, 2006 - to the Appeals Council in support of her application for benefits. (AR at 9, 10; see AR at 396). The Appeals Council denied plaintiff's request for review. (AR at 6-8).

Thereafter, plaintiff appealed to the United States District Court.

## **PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The Appeals Council failed to properly consider the opinion of Rajendra B. Patel, M.D., plaintiff's treating psychiatrist.

2. The ALJ failed to consider the type, dosage, effectiveness and side effects of plaintiff's medications.

3. The ALJ failed to fully develop the record with regard to plaintiff's mental impairment.

## **STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r,

169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

### A.  The Sequential Evaluation

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is

established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.     ALJ's Duty to Develop the Record**

In the decision, the ALJ noted that on October 16, 2001, while working as a bank teller, the bank was robbed and plaintiff was violently assaulted and threatened with a gun by bank robbers. (AR at 19 (citing AR at 243-44); see also AR at 401-403). The ALJ noted that plaintiff underwent "psychological and psychiatric treatment for what was primarily diagnosed as post traumatic stress disorder and was involved in a complicated workers' compensation claim involving physical and mental injuries with findings of psychophysiological reaction and neck and low back strain." (AR at 19). The ALJ determined that "[i]t is clear that the date of the noted robbery is [the] disability onset date in this case and that [plaintiff] was markedly limited . . . in terms of the performance of daily activities and social functioning as well as her ability to maintain concentration, pace and persistence due to her emotional treatment and the intensive treatment of her condition." (Id.).

In June 2003, plaintiff underwent a comprehensive clinical evaluation by Donald J. Feldman, M.D., in connection with plaintiff's worker's compensation claim. (AR at 240-62). Dr. Feldman stated that he had over two hours of face-to-face contact with plaintiff and spent over three hours reviewing her medical records. (AR at 240). The ALJ gave weight to Dr. Feldman's findings and noted that Dr. Feldman recommended plaintiff receive biweekly psychiatric treatment for six months and monthly treatments for another two years. (AR at 19; see AR at 260-61).

The ALJ found that medical improvement occurred in plaintiff's condition and determined that plaintiff was not disabled as of February 1, 2004.[1] (AR at 21). The ALJ found that plaintiff

---

[1] Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment or impairments present at the time of the most recent favorable medical decision, and an increase in the claimant's functional capacity to do basic work activities. 20 C.F.R. § 416.994(b)(1).

did not receive any mental health treatment from October 2003 through September 2005 and took no prescribed psychotropic medications during that time. (AR at 19). The ALJ noted that plaintiff alleged that she could not afford to continue her treatment, but discounted plaintiff's allegation based on the proceeds of her October 2003 worker's compensation claim settlement. (AR at 19).

      The ALJ cited to the findings of Louis A. Fontana, M.D., a board-certified psychiatrist who performed a complete psychiatric evaluation of plaintiff in November 2004, in support of his determination that plaintiff's condition improved as of February 1, 2004. (AR at 20; see AR at 339-344). The ALJ noted that Dr. Fontana documented a brief history of emotional problems that was consistent with the detailed history outlined by Dr. Feldman, except Dr. Fontana's report minimized the relationship between plaintiff's emotional problems and her inability to work. (AR at 20; see AR at 339-41). The ALJ noted that Dr. Fontana's findings were within normal limits, except for dysphoric mood and "much tearfulness[,]" but that her affect was described as full and appropriate. (AR at 20; see AR at 341). The ALJ went on to note that Dr. Fontana diagnosed plaintiff with post traumatic stress disorder, chronic, and considered the possibility of a major depressive disorder, moderate. The ALJ noted that despite this diagnosis, Dr. Fontana rated the severity of plaintiff's condition as marginally moderate; assigned her a Global Assessment of Functioning ("GAF")[2] score of 59; and concluded that plaintiff was able to perform simple and more complex tasks, deal with supervisors, coworkers and the public, attend work without additional supervision on a sustained full-time basis. (AR at 20; see AR at 342). The ALJ noted that the medical expert who testified at the hearing concurred in this assessment and opined that plaintiff would have problems only with fast paced work. (AR at 20; see AR at 432-34).

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score between 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

The ALJ also noted that plaintiff testified that she had been depressed since January of 2004. He noted that she testified that she was afraid to go to banks, had nightmares involving bank robbery, although they were not as vivid as they had been in the past, and that she currently had panic attacks and trouble sleeping that stemmed from a recent transient domestic problem. (AR at 20; see AR at 409, 418-20).

Based on the information in the record, the ALJ concluded that medical improvement occurred as of February 1, 2004. (AR at 21). The ALJ cited to the following evidence in support of this conclusion:

> [Plaintiff] stopped receiving treatment for her mental and physical impairments in October 2003 and received no treatment for the mental impairment until September 2005. The medical [expert] at the hearing and the agreed medical examiner in [plaintiff's] workers' compensation case disagreed on when [plaintiff] had recovered from her initial injury in 2001, but it occurred at least by the close of January 2003 since the findings in October 2003 and early 2004 were at most mild to moderate severity. Indeed, [plaintiff] admitted her condition might have improved in 2004 and she did admit her nightmares about the noted bank robbery were not as vivid and disturbing as they had been shortly after the incident.

(AR at 21). The ALJ determined that as a result of the medical improvement in plaintiff's condition, plaintiff could perform her past relevant work as a deputy court clerk. Accordingly, the ALJ concluded that plaintiff was not disabled as of February 1, 2004.

Earlier in the decision, the ALJ noted that plaintiff "has a long history of depression with hospitalization twice in 1987." (AR at 18). The ALJ noted that the treatment notes "from Dr. Patel submitted after the hearing note the history of hospitalization for suicidal ideation in early 2006, but the report of the hospitalization was not submitted." (AR at 20). The ALJ found that the submitted treatment notes from Dr. Patel include "no significant clinical findings and a

diagnosis of major depressive disorder," indicate that plaintiff's "complaints of panic attacks were in fact episodes of increased anxiety[.]" The ALJ also noted that Dr. Patel's treatment notes did not include a GAF score and stated little more than that plaintiff was "clinically stable." (AR at 20; see AR at 390-95).

Plaintiff alleges that the ALJ failed to fully develop the record regarding plaintiff's mental impairments. (Joint Stipulation at 12-13). Plaintiff argues that her history of hospitalization is significant and probative and that, in failing to re-contact Dr. Patel and develop the record regarding plaintiff's hospitalization for suicidal ideation in February 2006, the ALJ failed to meet his duty to fully develop the record. (Joint Stipulation at 13). Defendant argues that the ALJ properly considered plaintiff's intense domestic problems and her resulting hospitalization in February 2006. (Joint Stipulation at 15). Defendant notes that the ALJ had a duty to develop the record, not create the record, and argues that the ALJ properly fulfilled this duty. (Id.).

In Social Security cases, an ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). When the evidence is ambiguous, or if the ALJ finds that the record is inadequate to allow for proper evaluation of disability, the ALJ's duty to develop the record is triggered and he or she must "conduct an appropriate inquiry." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . ."); 20 C.F.R. § 416.1444. "In cases of mental impairments, this duty is especially important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir.1991); see Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (an ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his or her own interests).

An ALJ can discharge his or her duty to develop the record "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation

of the record." Tonapetyan, 242 F.3d at 1150; see also Smolen, 80 F.3d at 1288. The ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts" by procuring the necessary, relevant treatment records. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

Here, in a treatment note dated February 13, 2006, Dr. Patel states that plaintiff was hospitalized "on a 5150 as she was distraught and was having suicidal thoughts after fighting with [her husband.]"[3] (AR at 391). At the hearing, plaintiff testified that she was hospitalized from January 24, 2006 to January 26, 2006 after a domestic dispute with her husband. (AR at 416-17). Plaintiff testified that she was taken to a mental hospital because "[t]hey thought I was going to hurt myself," and further testified that she had thought about hurting herself at the time, and still thinks about it. (AR at 417). After the hearing, plaintiff submitted a letter from Dr. Patel dated May 22, 2006. (AR at 396). In the letter, Dr. Patel states that he first saw plaintiff in the mid-eighties for depression and has "seen her on and off for the last twenty years." (Id.). Dr. Patel stated that he began to see plaintiff on a regular basis as of September 15, 2006. He opined that plaintiff "suffers from ongoing chronic depression and has difficulty concentrating and functioning because of her illness." (AR at 396).

In the decision, the ALJ noted that the treatment notes "from Dr. Patel submitted after the hearing note the history of hospitalization for suicidal ideation in early 2006, but the report of the hospitalization was not submitted." (AR at 20). An ALJ has a responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the claimant] get medical reports." 20 C.F.R. §§ 404.1512(d), 416.912(d). While the ALJ noted that the hospitalization report was not submitted, there is no indication that the ALJ re-contacted Dr. Patel regarding plaintiff's hospitalization report, or made any other efforts to obtain additional information about it. The ALJ was aware of plaintiff's hospitalization in early 2006: plaintiff testified about her hospitalization at the hearing and the treatment notes submitted by Dr. Patel

---

[3] California Welfare and Institutions Code Section 5150 allows an authorized peace officer to confine for up to 72 hours any person who, as a result of mental disorder, is a danger to others or to himself or herself, or gravely disabled.

9

before the hearing also referenced plaintiff's hospitalization in January 2006. Plaintiff's hospitalization was a significant event in light of her history of psychiatric hospitalization and the ALJ's finding that plaintiff did, in fact, suffer from a disabling mental impairment from October 16, 2001 through January 31, 2004. The ALJ's duty to develop the record is heightened when the claimant suffers from a mental impairment and the ALJ failed to meet his duty to investigate the facts surrounding plaintiff's hospitalization and further develop the record. See Tonapetyan, 242 F.3d at 1150.

C.   **Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate. The ALJ failed to fully develop the record regarding plaintiff's mental impairment and her hospitalization in 2006. The ALJ's failure to develop the record constitutes error. On remand, the ALJ must develop the record by contacting Dr. Patel to obtain the records documenting plaintiff's hospitalization and make an effort to investigate the facts surrounding her hospitalization.[4]

///
///
///
///

---

[4] In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to consider the type, dosage, effectiveness and side effects of plaintiff's medications and that the Appeals Council failed to properly consider Dr. Patel's opinion. As explained above, however, the ALJ's error in failing to develop the record with regard to plaintiff's 2006 hospitalization constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 21, 2008

                                                         /s/ Jennifer T. Lum
                                                        JENNIFER T. LUM
                                                        UNITED STATES MAGISTRATE JUDGE